Charles E. Springer and Marion E. Springer v. Commissioner.
Springer v. Commissioner
Docket No. 60783.
United States Tax Court
T.C. Memo 1957-232; 1957 Tax Ct. Memo LEXIS 16; 16 T.C.M. (CCH) 1075; T.C.M. (RIA) 57232; December 18, 1957
*16 Roger Tilbury, Esq., for the petitioners. Leslie T. Jones, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in income tax against petitioners for the calendar year 1951 in the amount of $547.09. The issues for determination are (1) whether respondent erred in disallowing the sum of $3,150 claimed by petitioners in their 1951 income tax return as "Loss of water supply" as a casualty loss and (2) whether respondent erred in disallowing that amount as a loss from theft under section 23(e)(3) of the Internal Revenue Code of 1939. Findings of Fact Petitioners Charles E. Springer and Marion E. Springer are husband and wife who filed a joint income tax return for the year 1951 with the collector at Portland, Oregon. In their return for that year petitioners claimed a deduction in the amount of $3,150 as "Loss of water supply" which deduction was disallowed by respondent. During the year 1951, Charles Springer was a salesman and Marion Springer was an adjuster for a collection agency. Prior to 1951 Marion had been in ill health for several years and was advised by her doctor that *17 she should engage in some other type of work. She and her husband therefore decided to purchase farmland and operate it as a strawberry farm. To that end they entered into a contract with Eustace C. Watson to purchase 15 acres of land from him in the vicinity of Portland. In negotiating for the purchase petitioners discussed Watson's water supply. In the discussion they advised him that their intention was to operate the 15 acres as a strawberry farm. At that time there was on the premises a 50-foot dug well and petitioners inquired of Watson whether or not it would produce an adequate supply of water for personal use and irrigation for the purpose of raising strawberries. His answer to them was "that there was plenty of water there, that, although it was a dug well, it had been there a number of years, and he had never had any trouble with it." At the time of the negotiations Watson was not irrigating the property. Petitioners took possession of the premises on June 30, 1951. On July 4 of that year the well went dry and petitioners were required to import water for their personal needs. During November of the same year petitioners hired a well driller to drill a new well to a depth *18 of 200 feet where water was obtained for a short period of time but which required the addition of a pump to bring it to the surface. In early 1952 it was necessary to drill a new well to a depth of 415 feet because the water supply first acquired did not prove sufficient for even household needs. The additional drilling produced sufficient water for all of petitioners' requirements but also required the use of a motorized pump. It was common knowledge in the neighborhood of the property acquired by petitioners that shallow wells such as that which was in existence at the time they purchased the property virtually dried up during the latter months of the summer in that area and that the particular well on petitioners' property had been known to go dry upon several occasions during that portion of the year. Except for an exceptionally rainy summer, the well on the premises at the time of its purchase by petitioners did not furnish an adequate supply of water for a full summer growing season to irrigate a crop of strawberries upon the land purchased by them for that purpose. Petitioners brought suit against Watson for the purpose of recovering the purchase money paid by them to him *19 for acquisition of the premises here involved, the action being based upon his claimed fraudulent misrepresentation of the water capacity of the original well. Sometime prior to December 31, 1953, the action was discontinued by petitioners and during the year 1952 they paid to him the remaining amount due on the contract of purchase. The expenditures made by petitioners with repect to the acquisition of sufficient water supply for their purposes involved expenditure for drilling, installation of motorized pump, the rebuilding of such a pump, and the connecting of pumps to the well equipment. At no time after acquiring sufficient water supply for their needs did petitioners engage in any agricultural business upon the premises or farm elsewhere. Petitioners' expenditures for the acquisition of a sufficient supply of water for their needs were occasioned by their failure to purchase property whereon there existed a well of sufficient capacity to furnish their needs. Such expenditures were not occasioned because of any fraud or misrepresentation upon the part of Watson who sold them the premises here involved. Opinion Petitioners claim that in 1951, finding that their 50-foot *20 dug well was insufficient to provide an adequate water supply for their needs and having drilled a new well of 200 feet which, because of a cave-in of the sand strata in which the water had been located, went dry and because it was necessary that the new well be further drilled to a depth of 415 feet and because the new wells required pumps of a kind not required on the original well, they suffered a casualty loss in that year represented by the amount expended by them for drilling, purchase of pumps, rebuilding of a pump and connection of the pumps to the well equipment. In the alternative, they contend that the mentioned expenditures were necessitated by the fraud and misrepresentation of their vendor Watson in representing that the existing well was sufficient to furnish water for their persona needs and to irrigate a 15-acre strawberry farm; that this fraudulent misrepresentation constitutes theft within the meaning of section 23(e)(3) of the 1939 Code. [1]
*21 Clearly petitioners are not entitled to a loss deduction on either ground. No casualty is disclosed by this record. No sudden or unusual event occurred during the year 1951 which caused a drying up of the well purchased by them. Its diminishing supply of water throughout the summer of that year was not inconsistent with its own past performance or that of other like wells in the same vicinity. It is true that the summer of 1951 was unusually warm, but there is no indication from this record that the failure of petitioners' water supply was occasioned by a drought, and it appears that the failure was inherent in the type of well purchased by them and was not occasioned by a casualty. Richard A. Dow, 16 T.C. 1230; Ray Durden, 3 T.C. 1. It is also worthy of note that there is no evidence here presented which indicates the value of the premises purchased by petitioners before the occasion of their claimed water loss and immediately thereafter. Generally, the difference between those values to the extent of the property's adjusted basis would be the amount deductible as a casualty loss. Helvering v. Owens, (1939) 305 U.S. 468. Petitioners simply *22 purchased property which did not meet their requirements. Their expenditures sought to be deducted here as a casualty loss were in reality additional expenditures made for the purpose of adding a value to the property which did not theretofore exist represented by a continuing water supply sufficient for personal needs and sufficient to irrigate a 15-acre strawberry farm. Petitioners' alternative claim of loss in the amount of expenditures made for providing an adequate water supply because of a theft on the part of their vendor lacks substantiation by the record. Neither of them were farmers and apparently had had no experience in farming prior to their purchase of the property involved, but by the same token the record does not disclose that their vendor Watson was a farmer or that he had been operating the premises as a farm, and the undisputed evidence is that no attempt had been made by him or other previous owners of the land to irrigate it. Obviously, no representation by him regarding the adequacy of the existing well for the irrigation of the entire 15 acres could have amounted to more than the expression of an opinion by an owner and seller of property, and petitioners *23 were entirely unjustified in giving it the weight of a representation of an existing fact. It is noteworthy further that, although neighbors of Watson were well aware of the potentiality of the original well and its past history, the record is silent as to any inquiry made of them by petitioners. No other conclusion is open to us but that petitioners' purchase of the premises involved was with full realization of the risk that the existing well would not supply an adequate amount of water for their purpose and that they did not rely and were not justified in relying upon the opinion of Watson that it would supply adequate water. Viewing the word "theft" in its broadest connotation as it is used in section 23(e)(3), the record does not disclose a theft by Watson of the property of petitioners. In so concluding, we are strengthened in our belief by the fact that petitioners have fully carried out the terms of their purchase contract and have never complained to the appropriate authorities concerning the claimed fraudulent misrepresentations of their vendor. Without having amended their pleadings, petitioners on brief and in their opening statement take the position that the claimed *24 loss here in controversy is deductible either as an abandonment loss or a business loss. Because of their failure to amend their pleadings to include those issues, they are not before us and we do not here consider them. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * (e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. * * *↩